**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| OWNERS INSURANCE COMPANY, as assignee of Lindberg Waterproofing, Inc., and | ) ) ) |
| STARK TRUSS COMPANY, INC., | ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 4:21-CV-00184 JAR ) |
| | ) |
| FIDELITY AND DEPOSIT COMPANY OF MARYLAND, | ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

Plaintiff Owners Insurance Company ("Owners"), as assignee of Lindberg Waterproofing, Inc. ("Lindberg"), and Intervening Plaintiff Stark Truss Company, Inc. ("Stark Truss")[1] (collectively "Plaintiffs") bring this action against Defendant Fidelity and Deposit Company of Maryland ("F&D") alleging claims for breach of a labor and materials payment bond issued on a construction project. Owners alleges an additional claim for vexatious refusal to pay. This matter is before the Court on the parties' cross-motions for summary judgment. F&D also moves in the alternative to deny summary judgment to Plaintiffs pursuant to Rule 56(d). The motions are fully briefed and ready for disposition.

**Factual background**

The facts of this case are largely uncontroverted. In June 2015, BCC Partners, LLC ("BCC") and Ben F. Blanton Construction, Inc. ("Blanton") entered into a contract (the "Prime

---

[1] With the consent of Owners and F&D, the Court granted Stark Truss leave to intervene in the case. (Doc. No. 20).

Contract") for the construction of a luxury apartment building in St. Louis County, Missouri known as The Vue (the "Project"). Section 3.4.1 of the General Conditions of the Prime Contract provides:

> Unless otherwise provided in the Contract Documents, [Blanton] shall provide and pay for labor, materials, equipment, tools, construction equipment, and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work[.]

Section 8.6.8 of the Prime Contract concerning insurance and bonds provides:

> [Blanton] agrees to procure and maintain insurance of the types and with the limits specified in the Contract Documents and as required by [BCC]. [BCC] shall have the right to approve all insurance carriers. [Blanton] shall, upon request from [BCC], furnish Performance and Payment Bonds with sureties acceptable to [BCC]. As of the time of execution of this Agreement, the Contract Sum does not include the cost of Performance and Payment Bonds. If [BCC] requests [Blanton] to provide same, such will be provided with the cost for same added by Change Order. [Blanton] shall also furnish [BCC] with reasonable proof of financial responsibility to perform the Work and update this information upon request.

On June 25, 2015, F&D furnished a Labor and Materials Payment Bond ("Payment Bond") for the Project in the amount of $24,461,157.50 with Blanton as the principal and BCC as the obligee. The Payment Bond provides in part:

> [I]f the Principal [Blanton] shall promptly make payment to all claimants as hereafter defined, for all (1) labor and material used or reasonably required for use in the performance of the [BCC-Blanton] Contract … then this obligation shall be void, otherwise, it shall remain in full force and effect, subject, however, to the following conditions:
> . . .
> 2. The above-named Principal [Blanton] and Surety [F&D] hereby jointly and severally agree with the Obligee [BCC] that every claimant as herein defined, who has not been paid in full, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon.
> . . .
> For projects located in the State of Connecticut, Surety [F&D] is liable for and is obligated to pay any interest, costs, penalties or attorneys' fees imposed upon the Principal [Blanton] under any provisions of Connecticut Public Act 99-153[.]

The Bond defines a Claimant as "one having a direct contract with the Principal [Blanton] or a subcontractor of the Principal [Blanton], for labor, material, or both, used or reasonably required for use in the performance of the [Prime Contract[.]"

In May 2015, prior to supplying materials for the Project, Stark Truss approved a Credit Application submitted by Blanton pursuant to which Blanton agreed that:

> Past due balances are subject to a monthly finance charge computed at a periodic rate (to the extent permitted by law) of one and one-half percent (1.5%) per month (18% per year) of the balance past due … If it is necessary for [Stark Truss] to pursue a claim against [Blanton] to enforce the terms of this agreement, or to recover any indebtedness or damages, [Stark Truss] shall be entitled to recover from [Blanton] its reasonable attorney's fees, costs, and other expenses."

Thereafter, Blanton and Stark Truss entered into two purchase orders whereby Stark Truss agreed to supply various roof trusses, wall trusses, and other materials to Blanton for the Project, and Blanton agreed to pay for the materials at the rates set forth in the purchase orders. Disputes subsequently arose between Stark Truss and Blanton regarding Blanton's failure to pay Stark Truss for the materials it supplied, and Blanton's claims of alleged deficiencies in the materials supplied by Stark Truss.

On July 28, 2016, Blanton entered into a Subcontract Agreement with Lindberg for waterproofing work on the Project in the amount of $173,353.00. Article I of the Blanton-Lindberg Subcontract provides that the Prime Contract, defined therein as "Contract Documents," "are incorporated in this Subcontract Agreement by reference, and [Lindberg] is bound by the Contract Documents insofar as they relate in any way, directly or indirectly to the work covered by this Subcontract Agreement." Article XXVI.I of the Blanton-Lindberg Subcontract provides that "[i]n any dispute between [Blanton] and [Lindberg] related to this Subcontract Agreement, the prevailing party shall be entitled to recover its attorneys fees, expert fees, and costs from the non-prevailing party[.]" Disputes subsequently arose between Lindberg and Blanton with Lindberg

seeking to recover an outstanding balance of $27,000, plus interest and attorneys' fees, from Blanton on their subcontract and Blanton's claims of defective and incomplete work from Lindberg.

As a result of the disputes, the parties engaged in a multi-party arbitration proceeding with the American Arbitration Association ("AAA") between 2018 and 2020. See AAA Case No. 01-18-0004-2315, Ben F. Blanton Construction, Inc. v. BCC Partners, LLC et al. (the "Arbitration"). Owners represented Lindberg in the arbitration proceedings[2] under the terms of an insurance policy issued by Owners to Lindberg. F&D was not a party to the arbitration.

On June 12, 2020, the Arbitration Panel entered its Interim Award on Phase 1 Claims. The Panel found in favor of Stark Truss and against Blanton in the amount of $124,945.09 and declared that Stark Truss was a "prevailing part[y] in this proceeding and [is] entitled to recover reasonable attorneys' fees and other costs/expenses" from Blanton pursuant to the terms of the contract between Blanton and Stark Truss.

Likewise, the Arbitration Panel found in favor of Lindberg and against Blanton in the amount of $27,000 and declared that Lindberg was a "prevailing part[y] in this proceeding and [is] entitled to recover reasonable attorneys' fees and other costs/expenses under the prevailing party and other contract provisions, the AAA rules and/or applicable law." Both Stark Truss and Lindberg filed post-hearing submissions with respect to interest and attorney fees.

Blanton filed for bankruptcy on July 16, 2020. On October 15, 2020, the bankruptcy court modified the automatic stay in Blanton's bankruptcy case to allow the Arbitration Panel to finalize, complete and enter the Final Phase 1 Award.

---

[2] F&D and Owners dispute whether Owners was representing Lindberg on the prosecution of its labor and materials claim against Blanton, the defense of Blanton's defective work claim against Lindberg, or both. (Doc. No. 40 at ¶ 9, Doc. No. 51 at ¶ 10, Doc. No. 52 at ¶ 1).

4

Prior to the issuance of the Final Award, on September 21, 2020, F&D tendered payment of $27,000 to Lindberg – the principal amount of the Interim Award – plus interest of $106.56. On October 5, 2020, F&D tendered payment of $124,945.09 to Stark Truss – the principal amount of the Interim Award – plus interest of $19,102.20.

On October 27, 2020, the Panel issued its Final Award, awarding Stark Truss $58,671.44 in attorneys' fees and costs; $3,000 for the AAA's filing fee; and $32,015.39 for Stark Truss' share of the Panel's compensation. The Panel also awarded Stark Truss $56,444.58 in prejudgment interest through July 1, 2020, plus an additional $61.61 per diem from July 1, 2020 through the date of confirmation of the Award.

The Panel awarded Lindberg $177,183.38 in attorneys' fees and costs; $7,500 for the AAA's filing fee; and $41,238.01 for its share of the Panel's compensation. Lindberg assigned its interest in the Final Award, with the right to sue and collect, to Owners.[3]

F&D has denied liability for the additional sums awarded to Plaintiffs in the Arbitration for attorneys' fees, costs, and expenses on the grounds that those amounts were not recoverable under the express terms of the Payment Bond.

**Legal standard**

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those "that might affect the outcome of the suit under the governing

---

[3] F&D argues that Owners' motion should be denied pursuant to Rule 56(d) because it has not had the opportunity to conduct discovery on the nature of the assigned claims or Owners' standing to bring this suit.

law," and a genuine dispute is one "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Cockram v. Genesco, Inc., 680 F.3d 1046, 1051 (8th Cir. 2012). There is no genuine issue as to any material fact if the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case ..." Celotex, 477 U.S. at 322. Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. Husinga v. Federal-Mogul Ignition Co., 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007).

Federal Rule of Civil Procedure 56(d) provides that a court may "allow time … to take discovery" when "a [litigant] shows by … affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment. Fed. R. Civ. P. 56(d). "The party seeking additional evidence must show: '(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion.'" Toben v. Bridgestone Retail Operations, LLC, 751 F.3d 888, 895 (8th Cir. 2014) (quoting California., ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998)). A party cannot simply set forth some facts she "hope[s] to elicit from further discovery." Id. (quoting Campbell, 138 F.3d at 779). In particular, the party must demonstrate how postponement of a ruling on the summary judgment motion will enable the litigant "by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." Id. at 894 (quoting Ray v. Am. Airlines, Inc., 609 F.3d 917, 923 (8th Cir. 2010)). "A district court has 'wide

discretion' in considering a Rule 56(d) motion." GEICO Cas. Co. v. Isaacson, 932 F.3d 721, 726 (8th Cir. 2019) (quoting Toben, 751 F.3d at 895).

**Discussion**

The issue presented by the parties' cross-motions for summary judgment is whether, under the terms of the Payment Bond, F&D is obligated to pay the attorneys' fees, arbitration fees and expenses, and prejudgment interest awarded to Plaintiffs by the Arbitration Panel as sums "justly due." Because the parties' arguments overlap, the Court has addressed them together.

In support of its position that the Payment Bond covers the Panel's award of attorney fees, costs and expenses, Owners cites Brooke Drywall of Columbia, Inc. v. Bldg. Const. Enterprises, Inc., 361 S.W.3d 22 (Mo. Ct. App. 2011). In Brooke, the surety guaranteed payments due from the contractor to its subcontractors. Under the agreement between the contractor and one of its subcontractors, attorneys' fees were due the "prevailing party" in any litigation arising from the agreement. A dispute arose over payments to the subcontractor. After lengthy litigation, the contractor and the surety settled with the subcontractor for the entire principal sum in dispute and then submitted to the court the issues of whether the subcontractor was owed attorneys' fees and/or interest on the principal sum given that the bond did not specifically mention them. Id. at 24.

The Brooke court rejected the surety's argument that the bond guaranteed only payments for "materials, insurance premiums, and labor" based on the broad terms of the bond guaranteeing "payment … due" for a breach of any of the contractor's obligations (including its subcontract obligations):

> The bond states that it shall be void and of no effect *if* Contractor fully performs *all* of its obligations under the University agreement *and* promptly pays for all material, insurance premiums, and labor. If the bond only guaranteed payment for "material, insurance premiums, and labor," there would be no need for the first clause addressing when the bond is void. The bond then says that *if* Contractor fails to comply with *any* of the covenants contained in the University agreement, *then*

> the bond will remain in effect, *and* it may be sued upon by any subcontractor 'whom such payment is due."

Id. at 28 (emphasis in the original).[4] The court also relied on the fact that the bonded contract contained a covenant whereby the contractor agreed to comply with the terms of its own subcontracts, including attorneys' fees. Id. Notably, there is no such language in the Payment Bond or requirement in the Prime Contract. The Brooke court observed that "[a] bond guaranteeing *only* payments for "materials and labor" is narrower than one guaranteeing "payment … due" for a breach of *any* of the contractor's obligations, which is what we have here." Id. at 28 (emphasis in the original).

In addition, both Owners and Stark Truss rely on the Eighth Circuit's decision in D&L Constr. Co. v. Triangle Elec. Supply Co., 332 F.2d 1009 (8th Cir. 1964), an action by a subcontractor's project supplier to recover under a Capehart bond.[5] In that case, the supplier's

---

[4] The bond provided that:

> *if* [Contractor] shall faithfully perform and fulfill *all* the covenants, agreements, terms, conditions, requirements or undertakings of [the University agreement] *and* promptly make payment for materials incorporated, consumed or used in connection with the work set forth in [the University agreement] ... and all insurance premiums, both compensation and all other kinds of insurance, on said work, and for all labor performed on such work ... *then*, this obligation shall be void and of no effect, *but*
>
> it is expressly understood that *if* [Contractor] should make default in or should fail to strictly, faithfully and efficiently do, perform and comply with *any or more* of the covenants, agreements, terms, conditions, requirements or undertakings, as specified in or by the terms of [the University agreement], *then* this obligation shall be valid and binding upon [Contractor and Surety] and this bond shall remain in full force and effect; *and*
>
> the same may be sued on at the instance of any ... subcontractor ... *to whom such payment is due ....*

Id. at 28 (emphasis in the original).

[5] A Capehart bond is a bond required by federal law to protect parties furnishing labor and material used on federally sponsored projects, in this case, a Capehart Housing Project. Triangle, 332 F.2d at 1012. The bond in Triangle provided:

invoices to the subcontractor provided for interest on past due invoices and a reasonable attorneys' fee in the event of suit. The court held these invoices constituted a part of the contract of purchase and sale between the supplier and the subcontractor and measured the amount "justly due" the supplier, including attorneys' fees and interest. Id. at 1012 (citing United States ex rel. Sherman v. Carter, 353 U.S. 210 (1957)). In so holding, the Triangle court applied the rules of decisions developed under the Miller Act, 40 U.S.C. §§ 3131 to 3134, the federal law requiring surety bonds on federal construction projects, id. at 1011-12, and remarked that the need to look to state law to measure the extent of a subcontractor's obligation does not exist where attorneys' fees are covered by express contract, id. at 1013. Owners also cites, without discussion or analysis, to a body of federal case law interpreting similar bond language ("such sum or sums as may be justly due claimant") to hold sureties liable for a subcontractor's attorneys' fees under a statutory payment bond. (Doc. No. 10-2 at 2-3, 18).

F&D takes the position that this diversity case is governed by state law, not federal law, and that the holding in Brooke is therefore controlling. Under Missouri law, a surety's liability is limited to the terms and conditions stated in the bond. See Frank Powell Lumber Co. v. Fed. Ins. Co., 817 S.W.2d 648, 651 (Mo. Ct. App. 1991). F&D argues that unlike the broad terms of the bond guaranteeing payment due for a breach of *any* of the contractor's obligations that was at issue in Brooke, here, the narrow language of the Payment Bond guaranteeing payment of claims for labor and material – which it paid Plaintiffs with statutory interest – does not provide for payment

---

[Every claimant … who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed or materials furnished by such claimant … may sue on this bond … in the name of the claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon[.]

Id. at 1011.

of attorneys' fees, arbitration costs and expenses, or interest.[6] See Brooke, 361 S.W.3d at 28-29 (citing Knecht, Inc. v. United Pac. Ins. Co., 860 F.2d 74, 80 (3d Cir. 1988) and Dean v. Seco Elec. Co., 519 N.E.2d 837, 840 (Ohio 1988)). Moreover, there is no provision in the Prime Contract, the only contract bonded by F&D, for payment of attorneys' fees, costs, and expenses and therefore, the terms of the Blanton-Lindberg subcontract and the Blanton-Stark Truss Credit Agreement or Purchase Orders are irrelevant to its obligation to pay for labor and materials.

F&D further argues that Plaintiffs' reliance on Miller Act cases are misplaced when interpreting a private, common law bond, "as the Miller Act provides a special route to attorney fees that is not present here," citing Paige Int'l, Inc. v. XL Specialty Ins. Co., 267 F. Supp. 3d 205, 212 (D.D.C. 2017). Lastly, F&D argues there are factual issues related to Plaintiffs' claims and F&D's defenses which preclude summary judgment in favor of Plaintiffs.

Under the long-standing "American Rule," "attorneys' fees are not recoverable against a payment bond surety unless expressly authorized by the statute under which the bond is furnished, or by the bonded contract, or imposed because of the surety's own bad faith conduct in litigation involving a claim." See 3 Philip L. Bruner & Patrick J. O'Connor, Jr., Construction Law § 8:174 (2020); F.D. Rich Co., Inc. v. U.S. for Use of Indus. Lumber Co., Inc., 417 U.S. 116, 126 (1974).

Here, it is undisputed that the Payment Bond is a private, common law bond, not a statutory bond. Whereas interpretation of a surety's statutory bond obligations relies primarily on statutory purpose and intent, interpretation of a surety's obligation under a common law bond is subject to standard principles of contract interpretation and "is not to be extended by implication beyond the terms of its contract." See 4A Philip L. Bruner & Patrick J. O'Connor, Jr., Construction Law §

---

[6] F&D acknowledges the express terms of the Payment Bond providing for attorneys' fees for certain projects located in the state of Connecticut; however, as discussed *infra*, Connecticut Public Act 99-153 does not apply to Plaintiffs' claims.

12:10 (2020); see also Frank Powell, 817 S.W.2d at 651 (quoting Bolivar Reorganized School Dist. No. 1 v. American Sur. Co. of New York, 307 S.W.2d 405, 409 (Mo. 1957) ("[T]he obligation of the bond may not in the guise of construction be enlarged beyond the plain terms and stipulations[.]"). "In construing the surety's obligation under a construction bond, the terms of the bond and the bonded contract are to be construed together." 4A Bruner & O'Connor, § 12:10.

  "The cardinal principle" of contract interpretation is to determine the intent of the parties and give effect to that intention. See Monarch Fire Prot. Dist. of St. Louis Cty, Missouri v. Freedom Consulting & Auditing Servs, Inc., 644 F.3d 633, 638 (8th Cir. 2011). To ascertain the parties' intent, the Court considers the document as a whole, giving the words contained therein their ordinary meaning, Schnuck Markets, Inc. v. First Data Merch. Servs. Corp., 852 F.3d 732, 738 (8th Cir. 2017), and avoids an interpretation that renders other provisions meaningless, Gohagan v. Cincinnati Ins. Co., 809 F.3d 1012, 1015 (8th Cir. 2016). Specific to suretyship law, there is also a rule of construction which holds that "when the language of the contract is ambiguous and the surety is a company, the surety bond should be construed liberally in favor of the beneficiary." Paige, 267 F. Supp. 3d at 215. However, neither Owners nor Stark Truss contend that the Payment Bond is ambiguous. (Doc. No. 10-2 at 19; Doc. No. 36 at 8).

  Guided by these principles of contract interpretation, the Court finds and concludes that the Payment Bond obligated F&D to pay Plaintiffs' claims for labor and materials used in the performance of the Prime Contract, which it paid with the statutorily required interest, but does not obligate F&D to pay Plaintiffs' claims for attorney fees, arbitration fees and expenses, and prejudgment interest.

  As discussed above, when construing payment bonds, a "threshold consideration" is the precise nature of the bond, "as both the scope of a surety's liability and the applicable interpretive

rules vary depending on the typology." <u>Paige</u>, 267 F. Supp. 3d at 212 (quoting Kevin L. Lybeck, et al., <u>The Law of Payment Bonds</u> 5 (2d ed. 2011)). Interpretation of a surety's statutory bond obligations relies primarily on statutory purpose and intent. For instance, the purpose of the Miller Act is to protect subcontractors and second-tier subcontractors that supply labor and materials on federally sponsored projects, <u>see</u> <u>Triangle</u>, 332 F.2d at 1012, and the Act is liberally construed to effect this purpose, <u>see</u> <u>Carter</u>, 353 U.S. at 216. Under the Miller Act, persons working for contractors on federal projects have "the right to sue on such payment bond for the amount" of "labor or material" left "unpaid" in addition to the right to "prosecute the action to final execution and judgment for the sum or sums justly due him." <u>Paige</u>, 267 F. Supp.3d at 213; 40 U.S.C. § 270b(a) (2000).[7] The Miller Act does not expressly provide for attorney's fees or interest; however, most federal courts addressing the issue have held that interest and attorney's fees are recoverable if they are part of the contract between the subcontractor and supplier. See <u>GE Supply v. C & G Enters., Inc.</u>, 212 F.3d 14, 19 (1st Cir. 2000) (attorney fees); <u>U.S. ex rel. Maddux Supply Co. v. St. Paul Fire & Marine Ins. Co.</u>, 86 F.3d 332, 336 (4th Cir. 1996) (attorney fees and interest); <u>United States ex rel. Southeastern Municipal Supply Co., Inc. v. National Union Fire Insurance Co.</u>, 876 F.2d 92, 93 (11th Cir. 1989) (attorney's fees provision); <u>United States ex rel. Carter Equip. Co. v. H.R. Morgan, Inc.</u>, 554 F.2d 164, 166 (5th Cir.1977) (attorney's fees); <u>Travelers Indemnity Company v. United States</u>, 362 F.2d 896, 899 (9th Cir. 1966) (attorney's fees); <u>Triangle</u>, 332 F.2d at 1013 (interest and attorney's fees).

In contrast, the purpose of a common law bond issued for a private project is to protect the owner of the project. This makes sense: If Blanton defaulted as to its subcontractors, BCC would

---

[7] Congress amended the "sums justly due" language in 2002 to "the amount due." This amendment was not meant to substantively change the statute, but merely to "conform to common contemporary usage." <u>Paige</u>, 267 F. Sup.3d at 213 (citing <u>United States ex rel Tenn. Valley Marble Holding Co. v. Grunley Constr.</u>, 433 F. Supp.2d 104, 116 n.3 (D.D.C. 2006)).

need to ensure they were paid so that construction on the Project could proceed without stoppage. Paige, 267 F. Supp.3d at 214. "[A]ny benefits that materialmen or other third-party beneficiaries receive[] as a result of the surety bond [are] incidental and … available only in accordance with its terms." Frank Powell, 817 S.W.2d at 650-51. For this reason, Miller Act cases are not dispositive of the issues presented here and Plaintiffs' reliance on them is unavailing.

The Court finds the cases relied upon by the Brooke court, Knecht, Inc. v. United Pac. Ins. Co., 860 F.2d 74, 80 (3d Cir. 1988) and Dean v. Seco Elec. Co., 519 N.E.2d 837, 840 (Ohio 1988), instructive because the bonds at issue in these cases are virtually identical to the Payment Bond here. In Knecht, the condition of the bond, which incorporated the bonded contract, provided:

> If [Principal] shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the [bonded] Contract, then this obligation shall be void; otherwise it shall remain in full force and effect[.]

860 F.2d at 76. A claimant was defined in the bond as a person with a direct contract with the principal on the bond or with a subcontractor of the principal, for labor and material used or reasonably required for performance of the contract. Id. The bond further provided that the principal and surety agreed jointly and severally that every unpaid claimant "may sue on this bond for the use of the claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon," and that the owner "shall not be liable for the payment of any costs or expenses of any such suit." Id.

In concluding that attorney fees were not recoverable under the bond, the Knecht court explained:

> It is always true that when a plaintiff must make expenditures for attorney's fees to recover a debt it will not be made whole unless its fees are also recovered. Further, whenever a person is indebted to another the sum owed may be regarded as justly due … Thus, we see no significance with respect to attorney's fees in the fact that [plaintiff] may sue for a sum "justly due." In fact, we can hardly conceive of how

13

> a bond could be written to authorize a claimant to sue for anything less than a sum justly due. We also observe that in some contracts express provision is made for recovery of attorney's fees in the event of an action for a breach. Yet in [defendant's] bond no reference was made to attorney's fees. In the circumstances, we conclude that attorney's fees are not recoverable in this action.

Id. at 80-81.

In Dean, employees who had been underpaid in violation of the prevailing wage statute sued the contractor and its surety seeking wages, statutory penalties, and attorney fees. The payment bond delivered by the contractor on the project included the following provision:

> NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the [bonded] contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:
> ...
> 2. The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit.

519 N.E.2d at 839-40. The court held that in the absence of an express provision to contrary, the surety's liability on the bond was limited to payment for labor and material only and did not extend to liability for statutory penalties for underpayment and attorney's fees incurred by the employees in bringing the action. Id. at 841.

Likewise, the express language of the Payment Bond at issue here demonstrates that payment is to be made by F&D for labor performed or materials furnished and not for attorney fees, arbitration costs and expenses, or interest. The Bond states that F&D will act as the surety for claims made by unpaid claimants for "all labor and material used or reasonably required for use in the performance of the [Prime] Contract." The Bond defines a Claimant as "one having a direct

14

contract with the Principal [Blanton] or a subcontractor of the Principal, for labor, material, or both, used or reasonably required for use in the performance of the [Prime] Contract." This language indicates that F&D agreed to act as surety only for the debts arising from the labor and materials used to perform or complete the Project. See Frank Powell, 817 S.W.2d at 651 (Under Missouri law, a payment bond must be interpreted as written.).

Further, in construing the surety's obligation under a construction bond, the terms of the bond and the bonded contract are construed together. 4A Bruner & O'Connor, § 12:10. The Payment Bond incorporates the Prime Contract, which requires Blanton to pay its subcontractors "for labor, materials, equipment, tools, construction equipment, and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work[.]" As in Knecht and Dean, the Payment Bond does not specifically allow recovery of attorney fees, and unlike in Brooke, there is no language in the Prime Contract obligating Blanton to comply with the terms of its own subcontracts, including attorneys' fees. Therefore, the terms of the Blanton-Stark subcontract agreement or the Blanton-Stark Credit Agreement or Purchase Orders are not relevant to the Court's determination.

Stark Truss contends that inclusion of the "Connecticut Clause" in the Payment Bond is evidence of F&D's intent to extend to Connecticut claimants the same coverage for attorney fees, costs, and expenses under the terms of the Payment Bond that claimants in other states, including Missouri, already enjoy. F&D argues that reference to Connecticut Public Act 99-153 is evidence the Payment Bond does not cover these damages; otherwise, the terms of the Bond limiting such liability to that under the Connecticut statute would be rendered meaningless.

In 1999, the Connecticut legislature passed "An Act Concerning Fairness in Financing in the Construction Industry," Connecticut Public Act 99-153 (the "Fairness Act"), to provide

additional protection to persons who provide services, labor, or material on construction projections in Connecticut. 1 Robert F. Cushman and Stephen D. Butler, <u>Fifty State Construction Lien and Bond Law</u> § 8.02(B) (2d ed). This protection includes the award of interest, costs, attorney fees and penalties for violations of the "prompt pay" provisions. <u>Id</u>. The Fairness Act further provides the surety is not liable for these damages unless the applicable bond "expressly references" the Fairness Act and states that the surety is obligated for these damages. <u>Id</u>. Because Connecticut Public Act 99-153 applies only to projects in Connecticut, it is of no import in this case concerning a private construction project located in Missouri.

**Conclusion**

For these reasons, the Court finds and concludes that F&D's liability under the Payment Bond is limited to payment of claims for labor and materials used in the performance of the Prime Contract and that claims for attorney fees, costs, and expenses are not recoverable under the express terms of the Bond. The Court will, therefore, deny Plaintiffs' motions for summary judgment, grant F&D's motion for summary judgment and deny as moot F&D's alternative motions to deny Plaintiffs' motions for summary judgment pursuant to Rule 56(d).

Accordingly,

**IT IS HEREBY ORDERED** that summary judgment is granted in favor of Defendant Fidelity and Deposit Company of Maryland and against Plaintiffs Owners Insurance Company and Stark Truss Company, Inc., specifically:

Owners' Motion for Partial Summary Judgment [10] is **DENIED;**

Stark Truss' Motion for Summary Judgment [35] is **DENIED;**

F&D's Motion for Summary Judgment Against Owners [38] is **GRANTED**; and

F&D's Motion for Summary Judgment Against Stark Truss [41] is **GRANTED**.

**IT IS FURTHER ORDERED** that F&D's Alternative Motion to Deny Owners' Motion for Partial Summary Judgment Pursuant to Rule 56(d) [31] and Alternative Motion to Deny Stark Truss' Motion for Summary Judgment Pursuant to Rule 56(d) [56] are **DENIED as moot.**

A separate Judgment will accompany this Memorandum and Order.

Dated this 10th day of August, 2021.

_John A. Ross_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**